COPY

1  RICHARD D. McCUNE, Esq., State Bar No. 132124
   rdm@mccunewright.com
2  DAVID C. WRIGHT, Esq., State Bar No. 177468
   dcw@mccunewright.com
3  JAE (EDDIE) K. KIM, Esq., State Bar No.: 236805
   jkk@mccunewright.com
4  McCUNEWRIGHT LLP
   2068 Orange Tree Lane, Suite 216
5  Redlands, California  92374
   Telephone:  (909) 557-1250
6  Facsimile:  (909) 557-1275

7  Attorneys for Plaintiffs and all others similarly situated

8

9                    UNITED STATES DISTRICT COURT

10              FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12

13                                          ED CV 09 - 01671 SGL (OPx)

14  SYLVESTER MAYA, OFER MASACHI,  )  Case No.:
    as individuals and on behalf of all other )
15  similarly situated,                        )  **CLASS ACTION COMPLAINT**
                                               )
16              Plaintiffs,                     )  1. VIOLATION OF UNFAIR
                                               )     BUSINESS PRACTICES ACT
17       v.                                    )     [CAL. BUS. & PROF.
                                               )     CODE § 17200, ET SEQ.]
18  CENTEX CORPORATION; CENTEX    )
    HOMES CORPORATION; CENTEX     )  2. VIOLATION OF UNFAIR
19  HOMES, A NEVADA GENERAL       )     BUSINESS PRACTICES ACT
    PARTNERSHIP; CTX MORTGAGE     )     [CAL. BUS. & PROF.
20  COMPANY; and DOES 1 through 10, )     CODE § 17500, ET SEQ.]
    inclusive,                                 )
21                                             )  3. FRAUD
                Defendants.                     )
22                                             )  4. NEGLIGENT
                                               )     MISREPRESENTATION
23                                             )
                                               )  5. BREACH OF THE IMPLIED
24                                             )     COVENANT OF GOOD FAITH
                                               )     AND FAIR DEALING
25                                             )
                                               )  **DEMAND FOR JURY TRIAL**
26  _____ )

27

28

CLASS ACTION COMPLAINT                    1

1  Plaintiffs Sylvester Maya and Ofer Masachi ("Plaintiffs"), on behalf of themselves
2  and all others similarly situated (*i.e.*, the members of the Plaintiff Class described and
3  defined, *infra*), herein allege as follows:

# I

## JURISDICTION AND VENUE

6  1.    This Court has original jurisdiction of this action under the Class Action
7  Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005).  The amount in controversy
8  exceeds the sum or value of $5,000,000 exclusive of interest and costs, and there is
9  minimal diversity because certain members of the class are citizens of a different state
10  than any defendant as required by 28 U.S.C. § 1332(d)(2).

11  2.    Venue as to Defendant is proper in this judicial district because Defendants
12  Centex Corporation; Centex Homes Corporation; Centex Homes, a Nevada General
13  Partnership; and CTX Mortgage Company (hereinafter "CTX Mortgage") all do
14  substantial business in this judicial district and some of the acts complained of occurred
15  in this judicial district (the collective Defendants will be referred to as "Defendants" or
16  "Centex").

# II

## PARTIES

19  3.    Plaintiff Sylvester Maya is a resident of the county of San Bernardino, State
20  of California.  He entered into a contractual relationship with Defendants in the county of
21  San Bernardino, State of California, and his home that is the subject of the sale and this
22  action is located in the county of San Bernardino, State of California.

23  4.    Plaintiff Ofer Masachi is a resident of the county of San Bernardino, State of
24  California.  He entered into a contractual relationship with Defendants in the county of
25  San Bernardino, State of California, and his home that is the subject of the sale and this
26  action is located in the county of San Bernardino, State of California.

27  5.    Defendant Centex Corporation is the parent of all Centex entities.  Centex
28  Corporation is a home building and lending company with homeowner customers in

1  California as well as a number of other states.  Centex Corporation is incorporated in the

2  state of Nevada and headquartered in the city of Dallas, State of Texas.

3        6.     Defendant Centex Homes Corporation is the home building subsidiary of

4  Centex Corporation and conducts substantial business in the state of California as well as

5  in other states.  Centex Homes Corporation is incorporated in the state of Nevada and

6  headquartered in the city of Dallas, State of Texas.

7        7.     Defendant Centex Homes, a Nevada General Partnership, is the home

8  building subsidiary of Centex Corporation in the western United States and conducts

9  substantial business in the state of California as well as in other states.  Centex Homes is

10  headquartered in the city of Dallas, State of Texas.

11        8.     Defendant CTX Mortgage Company is the mortgage and lending subsidiary

12  of Centex Corporation and conducts substantial business in the State of California as well

13  as in other states.  CTX Mortgage Company is incorporated in the state of Nevada and

14  headquartered in the city of Dallas, State of Texas.

15        9.     Based upon information and belief, Plaintiffs allege that at all times

16  mentioned herein, each and every Defendant was acting as an agent and/or employee of

17  each of the other Defendants, and at all times mentioned was acting within the course and

18  scope of said agency and/or employment with the full knowledge, permission, and

19  consent of each of the other Defendants.  In addition, each of the acts and/or omissions of

20  each Defendant alleged herein were made known to, and ratified by, each of the other

21  Defendants.

22  **III**

23  **GENERAL FACTUAL ALLEGATIONS**

24        10.    The following general factual allegations are based upon information and

25  belief unless otherwise specified.

26        11.    Defendants are in the business of developing, constructing, and selling new

27  houses.  Centex Corporation is a publicly traded company and through its subsidiaries, is

28  one of the largest residential homebuilders in the United States.  Defendants have a very

1  significant presence in California, and have as their target market first-time and move-up

2  buyers.

3      12.    Traditionally, builders such as Defendants would obtain the raw land and

4  build the houses.  Then there would be separate companies that would market and sell the

5  houses, provide lending to new buyers, obtain the appraisals of property, obtain the

6  insurance for the property, and obtain title services for the property.

7      13.    However, over time the national builders such as Defendants saw an

8  opportunity to facilitate sales as well as generate additional profit by offering those

9  auxiliary services through their own companies.  As with other national builders,

10 sometime prior to 2004, Defendants expanded their home construction business to both

11 market the houses to prospective buyers and provide to the buyers the services utilized in

12 buying a house, including real estate agent services, financing and appraisals.

13     14.    Beginning in or about early 2004, Defendants began using their positions as

14 developer, builder, seller, broker and financier to implement a scheme to increase the

15 number of houses sold and to increase the amount of profit per sale.  The scheme was to

16 convince government entities, then the community, and finally buyers that Defendants

17 were building a traditional neighborhood with stable owners who occupied their homes

18 and who were vested in the community and neighborhood.  Implicit in that marketing

19 scheme was that Defendants were making a good-faith effort to sell homes to buyers that

20 they expected could afford to buy the houses and would be stable neighbors.

21     15.    However, in contrast to the way that Defendants were presenting their

22 developments to the government, community, and buyers, they set out to market and then

23 finance unqualified buyers that posed an abnormally high risk of foreclosure to increase

24 both the number of sales and the price of houses in the same neighborhoods that

25 Defendants were selling houses to traditionally qualified and low-foreclosure-risk buyers.

26     16.    Based on information and belief, Defendants accomplished this through high

27 pressure sales tactics, and then through their mortgage company, Defendants encouraged

28 and assisted buyers in obtaining mortgages that they were unqualified to obtain.

Defendants did this explicitly to sell more houses than they would have been able to sell if only traditionally qualified buyers were buying their houses, and to increase the profit per house through the creation of an artificial housing demand.

17.    Defendants were not willing to absorb the foreclosures that would result from their providing financing to unqualified buyers.  So as part of this scheme, Defendants guaranteed the profit, without accepting the inevitable losses, by immediately selling the loans they had underwritten to third-party banks and other financial entities. These financing businesses then would often resell the loan, further isolating Defendants from the likelihood of loss from the risky loans.

18.    In an attempt to disguise that these loans were for unqualified and high foreclosure risk borrowers, Defendants assisted and encouraged unqualified buyers to appear as qualified buyers by:

      a.  allowing and encouraging buyers to provide inflated stated and unverified income;

      b.  underwriting sub-prime loans for buyers with  bad credit history;

      c.  not requiring any substantial down payment;

      d.  underwriting or securing piggyback loans for second mortgages so that the buyers did not make any real down payment;

      e.  financing buyers in adjustable loans (interest only or below in many cases) and qualifying these buyers on the artificially low initial payments;

      f.  providing cash "incentives" to buyers at the close of escrow if the buyers used Defendants' mortgage company to finance the house, they eliminated the requirement that buyers pay closing costs;

      g.  obtaining inflated appraisals.

19.    By financing these unqualified buyers, Defendants knew, or should have known, that they were filling the neighborhood with high-foreclosure-risk buyers surrounding the traditional qualified and low-foreclosure-risk buyers.  Defendants knew, or should have known, that a number of these unqualified buyers were counting on house

1    appreciation to transform them in the future from unqualified to qualified buyers. This

2    made these buyers high-foreclosure-risk buyers. Defendants also knew, or should have

3    known, that buyers requiring subprime loans due to bad credit history were high-

4    foreclosure-risk buyers. Defendants further knew, or should have known, that buyers

5    who were not financially vested in the house, because they did not have to make a

6    substantial down payment or pay closing costs, are much more likely to "walk away"

7    from the house with any downturn in housing prices, which made these buyers high-

8    foreclosure-risk buyers.

9         20.    Defendants also sold houses to another group of buyers that constituted a

10   high foreclosure risk. While representing that they were developing a stable

11   neighborhood with owner-occupied houses and claiming to have procedures in place to

12   prevent "investors" from buying the houses, Defendants were selling houses to buyers

13   that it knew, or should have known, were investors that had no intention of occupying the

14   houses. These investors would then rent out the property thereby providing a

15   neighborhood that was not stable as represented in the marketing and sales materials.

16   Even more importantly, because the house was an investment and not a home, these

17   buyers were more likely to "walk away" from the house with any downturn in housing

18   prices, which made these buyers high-foreclosure-risk buyers.

19        21.    Defendants also knew, or should have known, that a neighborhood

20   containing a number of high-foreclosure-risk buyers was a materially important fact to

21   buyers of their houses. Foreclosures and short sales (a lender agreed sale below the

22   principal of the loan) are devastating to both the value and desirability of a neighborhood.

23   Foreclosures resulting in bank sales and short sales are usually well below market value.

24   These foreclosure sales and short sales then become the new comparative sales values for

25   the neighborhood, which result in a vastly lower market rate. This, in turn, triggers yet

26   another round of foreclosures and short sales, resulting in a further decline in market

27   value. Soon this cycle results in price free-fall for the houses in the neighborhood,

28   materially affecting the value of those homes not subject to foreclosures or short sales.

22.    A significant number of foreclosures and short sales also have a significant effect on the desirability of a neighborhood.  It results in abandoned houses; multiple families living in one home; transient neighbors with no long-term ties to the neighborhood; unfinished yards and unkempt yards; and, in some cases, increased crime.

23.    Despite the knowledge that the neighborhood included, and would include in the future, unqualified and high-foreclosure-risk home buyers, Defendants marketed the neighborhoods as stable and desirable neighborhoods while becoming even more aggressive in selling homes to unqualified and high-foreclosure-risk buyers, in order to continue receiving ever increasing profits.

24.    Defendants also made a conscious decision to conceal and not disclose to prospective buyers the fact that numerous houses in the neighborhoods were being purchased by unqualified and high-foreclosure-risk buyers, despite Defendants' knowledge that this could, and likely would over time, have a material negative effect on the value and desirability of the house and neighborhood.

25.    For several years this house of cards business scheme appeared not to have victims.  Defendants generated billions of dollars in sales and profit while the prices of houses continued to go up from the artificially inflated demand created by unqualified and high-foreclosure-risk buyers.

26.    As was inevitable, however, over time these unqualified and high-foreclosure-risk buyers began to default on their loans leading to foreclosures and short sales.  These foreclosures and short sales of properties were significantly below market value and depressed the value of the houses of the qualified and low-foreclosure-risk buyers.  A snowball effect of foreclosures and short sales then followed, each further depressing the market value of the neighborhoods.  This led to a catastrophic loss of value to the homeowners, wiping out the life savings of homeowners who did everything right.  It also led to the loss of people's homes to foreclosures; collapse of a number of community banks; massive unemployment in the local construction field; and devastating loss of tax revenues for local counties leading to loss of services and layoffs.

# IV

## PLAINTIFFS' FACTUAL ALLEGATIONS

27.    In or about November 2005, Plaintiff Sylvester Maya bought a new house located in the county of San Bernardino, California, from Defendant Centex Homes, a Nevada General Partnership.  In or about December 2005, Plaintiffs Ofer Masachi bought a new house located in the county of San Bernardino, California, from Defendant Centex Homes.  Defendants marketed both houses and their neighborhoods as stable and desirable.

28.    Plaintiffs were encouraged by Centex Homes to use CTX Mortgage to finance the house.  Plaintiffs were provided significant financial incentives if they would agree to finance through Centex Homes.  Plaintiffs were qualified purchasers of the homes.  Plaintiff Maya put a down payment of about 20% on his house, and Plaintiff Masachi put a down payment of about 25% on his house.  Plaintiffs had good credit scores and sufficient income to qualify for the loan.  The down payments were from Plaintiffs' life savings, including Plaintiff Maya's 401(K) earnings.  Plaintiffs applied for the loans and were financed through CTX Mortgage.

29.    CTX Mortgage selected the appraiser to appraise the properties.  Based on information and belief, the appraiser selected by CTX Mortgage was dependent on CTX Mortgage for a large percentage of its business and, therefore, was pressured to provide appraisals that met or exceeded whatever sales prices Centex was able to obtain for its houses.  Based on information and belief, the appraisals of Plaintiffs' houses were inflated.  Plaintiff Maya also used Centex Insurance Agency for insurance on his house.

30.    Defendants processed these transactions largely isolated from any neutral real estate business.

31.    Based on information and belief, the process for the purchase of Plaintiffs' houses was typical of how Defendants processed most of their sales.

32.    Based on information and belief, at the time Defendants sold the houses to Plaintiffs, Defendants had sold houses, and planned to sell houses in the future, to

1  unqualified and high-foreclosure-risk buyers, as well as professional investors that were

2  not owner occupiers of the houses.

3      33.    While Defendants provided Plaintiffs certain disclosures before or at the

4  time of sale, it did not provide Plaintiffs with any disclosure that Defendants had sold

5  houses, and would sell houses in the future, to unqualified and high-foreclosure-risk

6  buyers.  Defendants also did not disclose that they had sold houses, and planned to sell

7  houses in the future, to investors who would not occupy the houses.

8      34.    Plaintiffs were unaware at the time of purchase of the houses that

9  Defendants had sold houses, and planned to sell houses in the future, in their

10  neighborhoods to unqualified and high-foreclosure-risk buyers, as well as professional

11  investors that were not owner occupiers of the houses.

12      35.    Such disclosures were material to Plaintiffs in that they related both to the

13  value of their houses and the desirability of the properties.  If Defendants would have

14  made such disclosures, Plaintiffs would not have purchased the houses from Defendants.

15      36.    The Centex neighborhoods where Plaintiffs live have had a number of

16  foreclosures and short sales that, based on information and belief, have resulted in a

17  substantial loss of value to the surrounding homes; much more significant than if the

18  house had been located in a neighborhood where Defendants' scheme of selling to

19  unqualified and high-foreclosure-risk buyers did not occur.  The desirability of Plaintiffs'

20  properties and the Centex neighborhoods has been drastically altered and reduced as a

21  direct result of the foreclosures, short sales, and investor-owned properties.

22                                      **V**

23                      **CLASS ACTION ALLEGATIONS**

24      37.    Plaintiffs initially propose a nationwide class.  The "Class" in litigating this

25  case, is defined as follows:

26          All Centex Homes customers who purchased a new Centex Homes house

27          from January 1, 2004, through December 31, 2006, and put 20% or more

28          down toward the purchase of the house.

Excluded from the above class are any entities in which Defendants have a controlling interest, officers or directors of Defendants, and any customers who have brought individual lawsuits arising from the same allegations against Defendants.

38.    If the Court determines that a nationwide class is not warranted, Plaintiffs request, in the alternative, certification of a California class of new Centex Homes customers whose homes are located in California.

39.    This action is brought as a class action and may properly be so maintained pursuant to the provisions of the Federal Rules of Civil Procedure 23(a) and 23(b). Plaintiffs reserve the right to modify the class definitions and the class period based on the results of discovery.

40.    **Numerosity of the Class** – The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe that there are thousands of customers in the class.  Because the class members may be identified through business records regularly maintained by Defendants and their employees and agents, and through the media, the number and identities of class members can be ascertained.  Members of the Class can be notified of the pending action by e-mail, mail, and supplemented by published notice, if necessary.

41.    **Existence and Predominance of Common Questions of Fact and Law** – There are questions of law and fact common to the Class.  These questions predominate over any questions affecting only individual class members.  These common legal and factual issues include, but are not limited to:

        a.    whether Defendants engaged in the alleged scheme as set forth throughout this Complaint;

        b.    whether a neighborhood having, or expected to have, a high number of unqualified and high-foreclosure-risk owners of houses is material to the value and quality of life for buyers of houses in that neighborhood;

        c.    whether Defendants concealed and failed to disclose to the Class members that the neighborhoods where they were buying their houses

had, or were expected to have, a high number of unqualified and high-
foreclosure-risk owners that could materially and negatively affect the
value of the house and quality of life for buyers of the houses;

d.  whether the alleged scheme resulted in foreclosures and short sales in the
Class members' neighborhoods;

e.  whether such foreclosures and short sales resulted in a material decrease
in the values of the houses purchased by the Class members;

f.  whether such foreclosures and short sales resulted in loss of quality of
life for the owners in the neighborhood;

g.  whether Defendants' conduct as described above constitutes violations of
the causes of action set forth below.

42.  **Typicality** – The claims of the representative Plaintiffs are typical of the
claims of the members of the Class.  Plaintiffs, like all other members of the Class, have
sustained damages arising from Defendants' violations of the laws, as alleged herein.
The representative Plaintiffs and the members of the Class were and are similarly or
identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive
pattern of misconduct engaged in by Defendants.

43.  **Adequacy** – The representative Plaintiffs will fairly and adequately
represent and protect the interests of the Class members and has retained counsel who are
experienced and competent trial lawyers in complex and class action litigation.  There are
no material conflicts between the claims of the representative Plaintiffs and the members
of the Class that would make class certification inappropriate.  Counsel for the Class will
vigorously assert the claims of all Class members.

44.  **Predominance and Superiority** – This suit may be maintained as a class
action under Federal Rules of Civil Procedure 23(b)(3) because questions of law and fact
common to the Class predominate over the questions affecting only individual members
of the Class and a class action is superior to other available means for the fair and
efficient adjudication of this dispute.  The damages suffered by individual class members,

CLASS ACTION COMPLAINT                    11

1  while substantial, are small compared to the burden and expense of individual

2  prosecution of the complex and very expensive litigation needed to address Defendants'

3  conduct.  Even if class members themselves could afford such individual litigation, the

4  court system would be overwhelmed by the individual lawsuits.  In addition,

5  individualized litigation increases the delay and expense to all parties and to the court

6  system resulting from the complex legal and factual issues of this case.  Individualized

7  litigation also presents a potential for inconsistent or contradictory judgments.  By

8  contrast, the class action device presents far fewer management difficulties; allows the

9  hearing of claims which might otherwise go unaddressed because of the relative expense

10  of bringing individual lawsuits; and provides the benefits of single adjudication,

11  economies of scale, and comprehensive supervision by a single court.

12      45.    The Class Plaintiffs contemplate the eventual issuance of notice to the

13  proposed Class members setting forth the subject and nature of the instant action.  Upon

14  information and belief, Defendants' own business records and electronic media can be

15  utilized for the contemplated notices.  To the extent that any further notices may be

16  required, the Class Plaintiffs would contemplate the use of additional media and/or

17  mailings.

18      46.    In addition to meeting the statutory prerequisites to a Class Action, this

19  action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal

20  Rules of Civil Procedure, in that:

21          a.    Without class certification and determination of declaratory,

22              injunctive, statutory and other legal questions within the class format,

23              prosecution of separate actions by individual members of the Class

24              will create the risk of:

25              i.    Inconsistent or varying adjudications with respect to individual

26                  members of the Class which would establish incompatible

27                  standards of conduct for the parties opposing the Class; or

28              ii.   Adjudication with respect to individual members of the Class

which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

    b.    The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

    c.    Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

        i.    The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

        ii.    The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class;

        iii.    The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

        iv.    The difficulties likely to be encountered in the management of a Class Action.

## FIRST CAUSE OF ACTION

### Violation of Cal. Bus. & Prof. Code § 17200 *et seq.* – Unlawful, Fraudulent, and Unfair Business Act and Practices

### (Against all Defendants)

47.    Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

48.    Defendants' acts and practices as described herein constitute unlawful, fraudulent, and unfair business acts and practices, in that (1) Defendants' practices, as described herein, violate each of the statutes set forth within this Complaint, and/or (2) the justification for Defendants' conduct is outweighed by the gravity of the consequences to Plaintiffs and members of the Class, and/or (3) Defendants' conduct is immoral, unethical, oppressive, unscrupulous, unconscionable, or substantially injurious to Plaintiffs and members of the Class, and/or (4) the uniform conduct of Defendants has a tendency to deceive Plaintiffs and the members of the Class.

49.    Defendants had a legal duty to disclose to Plaintiffs and Class members at the times of sale all facts that would materially affect the value or desirability of the houses they sold to Plaintiffs and the class members.  The existence or expected existence of a number of unqualified and high-foreclosure-risk homeowners in the neighborhood was a material fact affecting the value and desirability of the houses that Plaintiffs and the Class members were sold by the Defendants.   Defendants not only knew about the existence of unqualified and high-foreclosure-risk homeowners in the neighborhood, but had in fact facilitated and assisted those buyers in obtaining financing through the mortgage arm of their business.  Defendants failed to disclose and did conceal this fact from Plaintiffs and Class members.  Plaintiffs and Class members would not have purchased the homes from Defendant if there had been proper disclosures regarding the existence of unqualified and high-foreclosure-risk homeowners in the neighborhoods.  As a direct and legal result of Defendants' conduct, Plaintiffs and Class members have been damaged.

50.    In addition to the above, the conduct as alleged throughout the complaint constitutes misrepresentation, fraud, unconscionability, and breach of the implied covenant of good faith and fair dealing, that not only results in liability as individual causes of action, but also provide the basis for a finding of liability under Cal. Bus. & Prof. Code § 17200 *et seq.*

51.     Plaintiffs and the Class members, and each of them, have been damaged by said practices.

52.     The conduct of Defendants as described herein violates Cal. Bus. & Prof. Code § 17200 *et seq.*, and other similar state unfair competition and unlawful business practices statutes.

53.     Pursuant to Cal. Bus. & Prof. Code §§ 17200 and 17203, Plaintiffs, on behalf of themselves and all others similarly situated, seek relief as prayed for below.

## SECOND CAUSE OF ACTION

### Violation of Cal. Bus. & Prof. Code § 17500 *et seq.* – False Advertising

### (Against all Defendants)

54.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

55.     The misleading standardized representations and advertisements regarding the practice were uniformly applied to Plaintiffs and the Class members.  Plaintiffs and many putative Class members were given standardized boilerplate sales contracts and sales pitches.  Many putative Class members also were exposed to uniform advertisements on websites and brochures.

56.     As a result, Plaintiffs and the Class members justifiably relied on such representations and advertisements and were damaged as a result.

57.     Plaintiffs, on behalf of themselves and the Class, seek relief as prayed for below.

## THIRD CAUSE OF ACTION

### Fraud

### (Against all Defendants)

58.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

59.     The misrepresentations, nondisclosure, and/or concealment of material facts made by Defendants to Plaintiffs and the members of the Class, as set forth above, were

1    known by Defendants to be false and material and were intended by Defendants to
2    mislead Plaintiffs and the members of the Class.

3        60.    Plaintiffs and the Class members were actually misled and deceived and
4    were induced by Defendants to purchase homes.

5        61.    As a result of the conduct of Defendants, Plaintiffs and the Class members
6    have been damaged.  In addition to compensatory damages, Plaintiffs seek punitive or
7    *exemplary* damages, pursuant to Cal. Civ. Code § 3294, in that Defendants engaged in
8    "an intentional misrepresentation, deceit, or concealment of a material fact known to the
9    defendant[s] with the intention on the part of the defendant[s] of thereby depriving a
10   person of property or legal rights or otherwise causing injury."

## FOURTH CAUSE OF ACTION
### Negligent Misrepresentation
### (Against all Defendants)

14       62.    Plaintiffs incorporate by reference and re-allege all paragraphs previously
15   alleged herein.

16       63.    Defendants had a legal duty to disclose to Plaintiffs and the Class members
17   at and before the times of sale all facts that would have materially affected the value of or
18   quality of life pertaining to living in the houses it sold to Plaintiffs and the Class
19   members.  The existence or expected existence of a number of unqualified and high-
20   foreclosure-risk homeowners in the neighborhood was a material fact affecting the value
21   and quality of life that Defendants not only knew about, but had intentionally created.

22       64.    Such knowledge was completely in the possession of Defendants and was
23   unknown to Plaintiffs and the Class members.  The failure to disclose such material facts
24   was uniform in the sale of all of Defendants' homes.

25       65.    Defendants uniformly represented to Plaintiffs and the Class members
26   through their written materials that the neighborhoods were stable and desirable.
27   Defendants knew, or in the exercise of reasonable diligence should have known, that
28   Plaintiffs and the Class members would rely upon such representations.

66.    Plaintiffs and the Class members did reasonably rely on those representations.

67.    Had Plaintiffs and the Class members known about these material facts, they would not have purchased Defendants' homes.

68.    As a result of the conduct of Defendants, Plaintiffs and the Class Members have been damaged.

## FIFTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Against all Defendants)

69.    Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

70.    California law implies a covenant of good faith and fair dealing in all contracts between parties.

71.    As a result of the Defendants' actions set forth hereinabove, Defendants have violated the implied covenant of good faith and fair dealing contained in the agreements which purport to govern Plaintiffs' and the Class members' home purchases, and as a result thereof, Plaintiffs and the Class members have been damaged and are entitled to damages as prayed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for relief as follows:

A.    For an order certifying the nationwide Class and appointing Plaintiffs and their counsel to represent the Class;

B.    Alternatively, if the Court does not grant certification of the nationwide Class, Plaintiffs pray for an order certifying a California Class, and appointing Plaintiffs and their counsel to represent the Class;

C.    For an order awarding Plaintiffs and the Class restitution and/or disgorgement of profits and other equitable relief as the Court deems proper;

1    D.    For an order awarding Plaintiffs and the Class compensatory damages under

2  the appropriate causes of action;

3    E.    For an order awarding Plaintiffs and the Class punitive damages as to the

4  appropriate cause of action;

5    F.    For an order enjoining Defendants:

6         1.    under Cal. Bus. & Prof. Code § 17203 from continuing to engage in

7              business acts and practices, or any of them, which are unlawful, unfair,

8              or fraudulent, as alleged herein; and

9         2.    under Cal. Bus. & Prof. Code § 17535 from continuing to engage in the

10             dissemination of advertisements which are untrue or misleading, alleged

11             herein;

12   G.    For an order awarding Plaintiffs and the Class pre-judgment and post-

13  judgment interest, as well as reasonable attorneys' and expert-witness fees and other

14  costs pursuant to Cal. Civ. Proc. Code § 1021.5, and other statutes as may be applicable;

15  and

16   H.    For an order awarding such other and further relief as this Court may deem

17  just and proper.

18  DATED:  September 3, 2009.              MCCUNEWRIGHT, LLP

19
20                                   BY: _____

21                                        Richard D. McCune
                                         Attorney for Plaintiffs
22  //

23  //

24  //

25
26  //

27  //

28

## DEMAND FOR JURY TRIAL

Plaintiffs, and all others similarly situated, hereby demands a trial by jury herein.

DATED: September 3, 2009.                      **McCuneWright, LLP**

                                        BY: _____
                                             Richard D. McCune
                                             Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen G. Larson and the assigned discovery Magistrate Judge is Oswald Parada.

The case number on all documents filed with the Court should read as follows:

## EDCV09- 1671 SGL (OPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division | [ ] Southern Division | [X] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Richard D. McCune, Esq. (SBN#132124)
McCUNEWRIGHT, LLP
2068 Orange Tree Lane, Suite 216
Redlands, California 92374
Telephone: (909) 557.1250
Facsimile: (909) 557.1275

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sylvester Maya, Ofer Masachi, as individuals and on behalf of all others similarly situated, <br><br> PLAINTIFF(S) <br><br> v. <br><br> Centex Corporation; Centex Homes Corporation; Centex Homes, A Nevada General Partnership; CTX Mortgage Company; and Does 1 through 10, <br><br> *inclusive,* <br><br> DEFENDANT(S). | CASE NUMBER <br><br> ED CV 09 - 01671 SGL (OPx) <br><br> **SUMMONS** |

TO:    DEFENDANT(S):  <u>Centex Corporation; Centex Homes Corp</u>oration; Centex Homes, A Nevada
General Partnership and CTX Mortgage Company

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  <u>Richard D. McCune</u>_____, whose address is  <u>2068 Orange Tree Lane, Suite 216, Redlands, CA  92374</u>_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

**TERRY NAFISI**
Clerk, U.S. District Court

Dated: SEP - 3 2009

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

COPY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>SYLVESTER MAYA, OFER MASACHI, as individuals and on behalf of all<br>others similarly situated, | **DEFENDANTS**<br>Centex Corporation; Centex Homes Corporation; Centex Homes, A Nevada<br>General Partnership; CTX Mortgage Company; and DOES 1 through 10, |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing<br>yourself, provide same.)<br>RICHARD D. McCUNE, ESQ. / McCUNEWRIGHT, LLP<br>2068 Orange Tree Lane, Suite 216, Redlands, California 92374<br>Telephone: (909) 557.1250 / Facsimile: (909) 557.1275 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S.
Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship
of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original
Proceeding
☐ 2 Removed from
State Court
☐ 3 Remanded from
Appellate Court
☐ 4 Reinstated or
Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-
District
Litigation
☐ 7 Appeal to District
Judge from
Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes   ☐ No         ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332(d)(2); Unfair Business Practices [Bus. & Prof. Code §§17200&17500]; Fraud; Negligent Misrepresentation; Breach of Implied Covenant Good Faith

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL<br>PROPERTY | PRISONER<br>PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to | ☐ 710 Fair Labor Standards |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product | ☐ 371 Truth in Lending | Vacate Sentence | Act |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | Liability | ☐ 380 Other Personal | Habeas Corpus | ☐ 720 Labor/Mgmt. |
| ☐ 450 Commerce/ICC | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Property Damage | ☐ 530 General | Relations |
| Rates/etc. | ☐ 150 Recovery of | Slander | ☐ 385 Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. |
| ☐ 460 Deportation | Overpayment & | ☐ 330 Fed. Employers' | Product Liability | ☐ 540 Mandamus/ | Reporting & |
| ☐ 470 Racketeer Influenced | Enforcement of | Liability | **BANKRUPTCY** | Other | Disclosure Act |
| and Corrupt | Judgment | ☐ 340 Marine | ☐ 422 Appeal 28 USC | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product | 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted | Liability | ☐ 423 Withdrawal 28 | **FORFEITURE /** | Litigation |
| ☐ 490 Cable/Sat TV | Student Loan (Excl. | ☐ 350 Motor Vehicle | USC 157 | **PENALTY** | ☐ 791 Empl. Ret. Inc. |
| ☐ 810 Selective Service | Veterans) | ☐ 355 Motor Vehicle | **CIVIL RIGHTS** | ☐ 610 Agriculture | Security Act |
| ☐ 850 Securities/Commodities/ | ☐ 153 Recovery of | Product Liability | ☐ 441 Voting | ☐ 620 Other Food & | **PROPERTY RIGHTS** |
| Exchange | Overpayment of | ☐ 360 Other Personal | ☐ 442 Employment | Drug | ☐ 820 Copyrights |
| ☐ 875 Customer Challenge 12 | Veteran's Benefits | Injury | ☐ 443 Housing/Acco- | ☐ 625 Drug Related | ☐ 830 Patent |
| USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- | mmodations | Seizure of | ☐ 840 Trademark |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | Med Malpractice | ☐ 444 Welfare | Property 21 USC | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product | ☐ 365 Personal Injury- | ☐ 445 American with | 881 | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization | Liability | Product Liability | Disabilities - | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal | Employment | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | Injury Product | ☐ 446 American with | ☐ 650 Airline Regs | (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | Liability | Disabilities - | ☐ 660 Occupational | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | **IMMIGRATION** | Other | Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization | ☐ 440 Other Civil | ☐ 690 Other | **FEDERAL TAX SUITS** |
| nation Under Equal | ☐ 240 Torts to Land | Application | Rights | | ☐ 870 Taxes (U.S. Plaintiff |
| Access to Justice | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus- | | | or Defendant) |
| ☐ 950 Constitutionality of | ☐ 290 All Other Real Property | Alien Detainee | | | ☐ 871 IRS-Third Party 26 |
| State Statutes | | ☐ 465 Other Immigration | | | USC 7609 |
| | | Actions | | | |

ED CV 09 - 01671 SGL (OPx)

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

SEP - 3 2009

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
  ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Centex Corp.-NV (incorporated); CTX Mortgage Co.-NV (incorporated); Centex Homes, A Nevada General Partnership; Centex Homes Corp-NV (incorporated) |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER):  _____   Date  September 2, 2009

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |