UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 13 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SYLVESTER MAYA; OFER MASACHI, as individuals and on behalf of all others similarly situated, | No. 10-55658 |
| Plaintiffs - Appellants, | D.C. No. 5:09-cv-01671-VAP-OP |
| v. | U.S. District Court for Central California, Riverside |
| CENTEX CORPORATION; et al., | **MANDATE** |
| Defendants - Appellees. | |

RECEIVED
CLERK, U.S. DISTRICT COURT

OCT 1 3 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

| | |
|---|---|
| REMEDIOS MARTINEZ, as an individual and on behlaf of all other similarly situated, | No. 10-55660 |
| Plaintiff - Appellant, | D.C. No. 5:09-cv-01672-VAP-DTB |
| v. | U.S. District Court for Central California, Riverside |
| D.R. HORTON, INC.; DHI MORTGAGE COMPANY GP, INC., | |
| Defendants - Appellees. | |

| | |
|---|---|
| EDILBERTO LUMALU; et al., | No. 10-55662 |
| Plaintiffs - Appellants, | D.C. No. 5:09-cv-01669-VAP-OP |
| v. | U.S. District Court for Central |

MDC HOLDINGS, INC., DBA
Richmond American; et al.,

        Defendants - Appellees.

California, Riverside

STELLA STEPHENS, as an individual
and on behalf of all other similarly
situated and TIMOTHY YOUNG,

        Plaintiffs - Appellants,

  v.

LENNAR CORPORATION; et al.,

        Defendants - Appellees.

No. 10-55663

D.C. No. 5:09-cv-01668-VAP-DTB
U.S. District Court for Central
California, Riverside

SOLOMON KELLY, as an individual
and on behalf of all other similarly
situated; JAMES MOLINA, as an
individual and on behalf of all others
similarly situated,

        Plaintiffs - Appellants,

v.

BEAZER HOMES USA, INC.; et al.,

        Defendants - Appellees.

No. 10-55664

D.C. No. 5:09-cv-01674-VAP-DTB
U.S. District Court for Central
California, Riverside

MATTHEW NIELSON, as individual
and on behalf of all other similarly
situated; NICOLE NIELSON, as

No. 10-55665

| | |
|---|---|
| individual and on behalf of all other similarly situated,<br><br>      Plaintiffs - Appellants,<br><br>v.<br><br>SHEA HOMES INC.; et al.,<br><br>      Defendants - Appellees. | D.C. No. 5:09-cv-01673-VAP-DTB<br>U.S. District Court for Central California, Riverside |
| GASPARE C. ONETO; et al.,<br><br>      Plaintiffs - Appellants,<br><br>v.<br><br>THE RYLAND GROUP, INC.; et al.,<br><br>      Defendants - Appellees. | No. 10-55667<br><br>D.C. No. 5:09-cv-01670-VAP-DTB<br>U.S. District Court for Central California, Riverside |
| JAMES F. DODARO, as an individual and on behalf of all other similarly situated,<br><br>      Plaintiff - Appellant,<br><br>v.<br><br>STANDARD PACIFIC CORP, DBA Standard Pacific Homes and STANDARD PACIFIC MORTGAGE, INC.,<br><br>      Defendants - Appellees,<br><br>and | No. 10-55668<br><br>D.C. No. 5:09-cv-01666-VAP-OP<br>U.S. District Court for Central California, Riverside |

SHEA HOMES; et al.,

             Real-party-in-interest.

       The judgment of this Court, entered September 21, 2011, takes effect this date.

       This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:
Molly C. Dwyer
Clerk of Court

Theresa Benitez
Deputy Clerk

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

SYLVESTER MAYA; OFER MASACHI,
as individuals and on behalf of all
others similarly situated,
                    *Plaintiffs-Appellants,*

            v.

CENTEX CORPORATION; CENTEX
HOMES, a Nevada General
Partnership; CTX MORTGAGE
COMPANY,
                    *Defendants-Appellees.*

No. 10-55658

D.C. No.
5:09-cv-01671-
VAP-OP

REMEDIOS MARTINEZ, as an
individual and on behalf of all
others similarly situated,
                    *Plaintiff-Appellant,*

            v.

D.R. HORTON, INC.; DHI
MORTGAGE COMPANY GP, INC.,
                    *Defendants-Appellees.*

No. 10-55660

D.C. No.
5:09-cv-01672-
VAP-DTB

17931

EDILBERTO LUMALU; BRIAN DIETZ;
BRENDA DIETZ; CANDICE
MCDONALD, as individuals and on
behalf of all others similarly
situated,

*Plaintiffs-Appellants,*

v.

MDC HOLDINGS, INC., DBA
Richmond American; RICHMOND
AMERICAN HOMES OF CALIFORNIA,
INC.; HOMEAMERICAN MORTGAGE
CORPORATION,

*Defendants-Appellees.*

No. 10-55662
D.C. No.
5:09-cv-01669-
VAP-OP

STELLA STEPHENS; TIMOTHY YOUNG,
as individuals and on behalf of all
others similarly situated,

*Plaintiffs-Appellants,*

v.

LENNAR CORPORATION; LENNAR
HOMES OF CALIFORNIA, INC.;
UNIVERSAL AMERICAN MORTGAGE
COMPANY,

*Defendants-Appellees.*

No. 10-55663
D.C. No.
5:09-cv-01668-
VAP-DTB

SOLOMON KELLY; JAMES MOLINA, as
individuals and on behalf of all
others similarly situated,
                    *Plaintiffs-Appellants,*

                    v.

BEAZER HOMES USA, INC.; BEAZER
HOMES HOLDINGS CORPORATION;
BEAZER MORTGAGE CORPORATION,
                    *Defendants-Appellees.*

No. 10-55664
D.C. No.
5:09-cv-01674-
VAP-DTB

MATTHEW NIELSON; NICOLE
NIELSON, as individuals and on
behalf of all others similarly
situated,
                    *Plaintiffs-Appellants,*

                    v.

SHEA HOMES INC.; J.F. SHEA CO.,
INC.; SHEA MORTGAGE, INC.,
                    *Defendants-Appellees.*

No. 10-55665
D.C. No.
5:09-cv-01673-
VAP-DTB

Gaspare C. Oneto; Paul M.
Nakabayashi; Sandra L.
Nakabayashi; John Butler; Linda
Butler, as individuals and on
behalf of all others similarly
situated,

     *Plaintiffs-Appellants,*

    v.

The Ryland Group, Inc.; Ryland
Homes of California, Inc.;
Ryland Mortgage Company,
    *Defendants-Appellees.*

No. 10-55667

D.C. No.
5:09-cv-01670-
VAP-DTB

JAMES F. DODARO, as an individual
and on behalf of all others
similarly situated,

*Plaintiff-Appellant,*

v.

STANDARD PACIFIC CORP., DBA
Standard Pacific Homes;
STANDARD PACIFIC MORTGAGE, INC.,

*Defendants-Appellees,*

and

SHEA HOMES; J.F. SHEA CO. INC.;
SHEA MORTGAGE, INC.; CENTEX
CORPORATION; CENTEX HOMES,
LLP, Erroneously Sued As Center
Homes and Center Homes
Corporation; CTX MORTGAGE
COMPANY; DHI MORTGAGE
COMPANY GP, INC.; THE RYLAND
GROUP, INC.; RYLAND HOMES OF
CALIFORNIA, INC.; RYLAND
MORTGAGE COMPANY; LENNAR
CORPORATION; LENNAR HOMES OF
CALIFORNIA, INC.; UNIVERSAL
AMERICAN MORTGAGE COMPANY,
Erroneously Sued As Universal
Mortgage Company; EAGLE HOME
MORTGAGE OF CALIFORNIA, INC.,
Erroneously Sued As Eagle Home
Mortgage Inc.,

*Real-parties-in-interest.*

No. 10-55668
D.C. No.
5:09-cv-01666-
VAP-OP

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
May 9, 2011—San Francisco, California

Filed September 21, 2011

Before: Betty B. Fletcher and Sidney R. Thomas,
Circuit Judges, and Nancy Gertner, District Court Judge.*

Opinion by Judge B. Fletcher

---

*The Honorable Nancy Gertner, District Judge for the U.S. District
Court for Massachusetts, Boston, sitting by designation. Judge Gertner
retired from the judiciary on September 1, 2011, but concurred in the opin-
ion prior to her retirement.

## COUNSEL

Andrea Bierstein (argued), Mitchell Breit, and Jayne Conroy, Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP, New York, New York; Derek Yeats Brandt, Simmons Browder Gianaris Angelides & Barnerd LLC. East Alton, Illinois; Jae Kim, Richard Dale McCune, Jr., and David Christopher Wright, McCune & Wright, LLP, Redlands, California, for plaintiffs Sylvester Maya, Ofer Masachi, Remedios Martinez, Edilberto Lumalu, Brian Dietz, Brenda Dietz, Candice McDonald, Stella Stephens, Timothy Young, Solomon Kelley, James Molina, Matthew Nielson, Nicole Nielson, Gaspare C. Oneto, Paul M. Nakabayashi, Sandra L. Nakabayashi, John Butler, Linda Butler and James Dodaro, on behalf of themselves and others similarly situated.

Nathaniel Garrett (argued), Darren K. Cottriel, Richard S. Ruben, and Craig Stewart, Jones Day, Irvine, California, for defendants Lennar Corporation, Lennar Homes of California, Inc., and Universal American Mortgage Company.

William P. Donovan, Jr., Anahit Tagvoryan, DLA Piper LLP, Los Angeles, California, for defendants Center Corporation, Centex Homes, and CTX Mortgage Company.

Valentine Shade Hoy, Megan A. Mazza, Jeffrey R. Patterson and Charles L. Pernicka, Allen Matkins Leck Gamble Mallory & Natsis, LLP, San Diego, California, for defendants D.R. Horton, Inc. and DHI Mortgage Company GP, Inc.

Jason Charles Gless, Daniel Adlai Berman, and Keith Evan Smith, Wood Smith, Henning & Berman, Riverside, California, for defendants MDC Holdings, Inc., Richmond American Homes of California, Inc., and HomeAmerican Mortgage Corporation.

Lawrence J. Bracken, II, Phillip J. Eskenazi, Kirk Hornbeck, and Bryan A. Powell, Hunton & Williams, Atlanta, Georgia,

for defendants Beazer Homes USA, Inc., Beazer Homes
Holdings Corporation, and Beazer Mortgage Corporation.

Donald L. Morrow, Paul, Hastings, Janofsky & Walker LLP,
Costa Mesa, California, for defendants Shea Homes, Inc., J.F.
Shea Co, Inc., and Shea Mortgage, Inc.

Nancy Nguyen Sims and Perrie M. Weiner, DLA Piper LLP,
Los Angeles, California, for defendants The Ryland Group,
Inc., Ryland Homes of California, Inc., and Ryland Mortgage
Company.

Robert Lennart Green, Stephanie Michelle Lemmon, Kather-
ine Villareal Lizardo, and Brian Plante, Green & Hall, APC,
Santa Ana, California, for defendants Standard Pacific Corp.,
DBA and Standard Pacific Mortgage, Inc.

---

## OPINION

B. FLETCHER:

This case arises against the backdrop of the national hous-
ing crisis. Nationwide, foreclosures are increasing, construc-
tion and purchase of new homes is decreasing, and home
values are plummeting.[1] In some ways, the facts presented
here echo national trends, but we decide a fairly narrow ques-
tion: whether individuals who purchased homes in new devel-
opments have standing to sue the developers for injuries
allegedly caused by the developers' practice of marketing
neighboring homes to individuals who presented a high risk
of foreclosure and abandonment of their homes, financing
those high-risk buyers, concealing that information, and mis-
representing the character of the neighborhoods. The district

---

[1]See generally, Harvard University Joint Center for Housing Studies,
*The State of the Nation's Housing 2011*, available at
http://www.jchs.harvard.edu/publications/ets/011/son2011.pdf.

court held that plaintiffs did not have standing because none of the alleged injuries amounted to a concrete, non-conjectural injury-in-fact, and that there was no sufficiently strong causal connection between any injury and defendants' conduct. It also denied plaintiffs leave to amend their complaints. We reverse and remand for further proceedings.

## I.

### A.

Plaintiffs are individual homeowners who purchased houses in new developments constructed by one of eight large national home-builders between 2004 and 2006. Each of them made a down payment of twenty-percent or more of the home's purchase price. Defendants are some of the nation's largest housing developers, and include the developers' parent companies and subsidiary mortgage companies. Plaintiffs seek damages, attorneys fees and costs, and the option to rescind their home purchases due to defendants' fraud, negligent misrepresentation, breach of implied covenant of good faith and fair dealing, and violations of California's Business and Professional Code (CBPC). They also seek an injunction prohibiting defendants from continuing to engage in practices violating the CBPC, or providing mortgage services or financing to buyers purchasing homes from defendants.

Plaintiffs claim that defendants represented that they were building "stable, family neighborhoods occupied by owners of the homes" According to the plaintiffs, "[i]mplicit in this marketing scheme was that [d]efendants were making a good-faith effort to sell homes to buyers who they expected could afford to buy the houses and would be stable neighbors." Nevertheless, defendants marketed the houses to "unqualified buyers who posed an abnormally high risk of foreclosure."[2]

---

[2]Plaintiffs do not explicitly define what they mean by "unqualified" buyers, but it appears their definition encompasses those with unverified income, poor credit history, or inability to make a down payment of less than 20% of the home's value.

Similarly, plaintiffs claim that defendants represented that they "discourage[ ] speculation . . . [and] intended to sell homes only to people who will occupy them" but sold homes to investors who had no intent to reside in the homes and were more likely to walk away from the homes in times of economic hardship.

Plaintiffs claim that these misrepresentations and omissions were part of a comprehensive scheme to increase defendants' profits. They allege that defendants financed at least 65% of the mortgages on homes in their communities. Plaintiffs contend that by marketing homes to high-risk buyers, and by financing buyers who may not have been able to obtain other financing, defendants created a "buying frenzy" that artificially increased demand and home prices. They maintain that defendants' marketing and lending practices were material information "related both to the value of their houses and the desirability of the properties." They allege that "[i]f Defendants had made such disclosures, Plaintiffs would not have purchased the houses from Defendants and/or [sic] would not have paid an inflated price for the house."

Plaintiffs aver that since they purchased their homes, "as was inevitable, . . . these unqualified and high-foreclosure-risk buyers began to default on their loans leading to foreclosures and short sales." Their neighborhoods have allegedly had "a number of foreclosures and short sales that have resulted in a substantial loss of value to the surrounding homes." They allege that the loss was "much greater than if their houses had been located in a neighborhood where Defendants' scheme . . . did not occur." Plaintiffs further contend that the foreclosures and short sales have "drastically altered" the "desirability" of their properties and neighborhoods, resulting in abandoned houses, multiple families living in one home, transient neighborhoods, and even increased crime.

Plaintiffs' claims fall into two broad categories. They allege injuries that occurred *at the time of sale*: namely, that

they paid more for their homes than they were actually worth at the time, and that they would not have purchased their homes had defendants made the proper disclosures. We will refer to these claims as plaintiffs' "overpayment" and "rescission" claims. Plaintiffs also allege injuries that occurred *after* the sale: that their homes have decreased in economic value and desirability as places to live. We will refer to these claims as plaintiffs "decreased value" and "decreased desirability" claims.

### B.

Defendants each filed a motion to dismiss, arguing that the plaintiffs (1) lacked constitutional and statutory standing; (2) failed to allege their fraud-based claims with particularity as required by Rule 9(b); (3) failed to state a claim as to each cause of action under Rule 12(b)(6). The district court granted all of the motions to dismiss on the grounds that plaintiffs lack constitutional standing.

The district court, relying on three cases presenting similar facts, concluded that plaintiffs failed to allege a "concrete, particular, and actual injury." *See Kaing v. Pulte Homes, Inc.*, No. 09-5057, SC 2010 WL 625365 (N.D. Cal. Feb. 18, 2010); *Tingley v. Beazer Homes Corp.*, No. 3:07cv176, 2008 WL 1902108 (W.D.N.C. April 25, 2008); *Green v. Beazer Homes Corp.*, No. 3:07-1098-CMC, 2007 WL 2688612 (D.S.C. Sept. 10, 2007)). First, it held that because none of the owners had sold or attempted to sell their homes, any loss in the value of homes caused by the builders' wrongful acts and omissions was "conjectural." In other words, the loss in value could not "be ascertained, nor measured [against the initial purchase price] unless and until the owner sells the house." Second, the district court concluded that both the decreased value and alleged overpayment had the capacity "to fluctuate with changes in the economy," thus "strongly suggesting" that the injury was "conjectural and speculative, not actual or imminent."

In addition, the district court held that none of the alleged injuries were "fairly traceable" to defendants' actions. As to plaintiffs' decreased value theory, the district court held that any loss in value to plaintiffs' homes "necessarily depend[s]" on a causal chain including numerous independent forces, including the decisions of "unqualified" buyers to default on their homes and the decision of mortgage assignees to foreclose on the defaulted mortgages. Similarly, it held that the decreased desirability of the neighborhood (unkempt yards, transient neighbors, etc.) was not linked to defendants' conduct by "more than speculation." Finally, with respect to the overpayment theory, the district court stated that the injury depended on a number of factors inflating housing prices nationwide. Because the district court held that plaintiffs lacked standing, it dismissed the cases for lack of subject matter jurisdiction, and declined to reach the Rule 9 and failure to state a claim arguments. The court also denied plaintiffs' request to amend in order to introduce expert testimony that could cure any defect in standing, and dismissed the cases with prejudice.

## II.

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1993). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc., v. Laidlaw Ent'l Serv., Inc*, 528 U.S. 167, 180 -81 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). We review de novo a district court's determination

that plaintiffs lack constitutional standing. *Breiner v. Nev. Dept. of Corrections*, 610 F.3d 1202, 1206 (9th Cir. 2010).

## A.

[1] The district court erroneously concluded that lack of Article III standing was grounds for dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Though lack of *statutory* standing requires dismissal for failure to state a claim, lack of *Article III* standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Simmonds v. Credit Suisse Sec. (USA) LLC*, 638 F.3d 1072, 1087 n.6 (9th Cir. 2011); *see also Vaughn v. Bay Envt'l Mgmt., Inc.*, 567 F.3d 1021, 1022 (9th Cir. 2009) (statutory standing); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 (9th Cir. 2003) (constitutional standing). In light of this error, the district court unnecessarily limited the scope of its review. While review for failure to state a claim under 12(b)(6) is generally confined to the contents of the complaint, *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006), in determining constitutional standing, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001) (in assessing standing, the court may consider "the complaint and any other particularized allegations of fact in affidavits or amendments to the complaint").

Moreover, because the district court treated the motion as a 12(b)(6), it inappropriately applied the standards of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* and *Iqbal* addressed the pleading required to survive a motion to dismiss for failure to state a claim, and, distilled to their essence, impose two requirements. First, the reviewing court, though crediting fac-

tual assertions made in the pleadings, is not required to credit legal conclusions. *Iqbal*, 129 S. Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 555). Second, the complaint cannot survive a motion to dismiss unless it alleges facts that plausibly (not merely conceivably) entitle plaintiff to relief. *Id.* at 1950-51. In this case, the district court stressed that the complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." It also concluded that "[p]laintiffs failed to plead facts sufficient 'to raise a right to relief above the speculative level.' "

*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context because in determining whether plaintiff states a claim under 12(b)(6), the court necessarily assesses the merits of plaintiff's case. But the threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim. Rather, "[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits." *Equity Lifestyle Props., Inc. v. San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008); *see also Seldin*, 422 U.S. at 500 (Standing "in no way depends on the merits of the [ ] contention that particular conduct is illegal."); *Bell v. Hood*, 327 U.S. 678, 682 (1946); *Catholic League for Religious and Civil Rights v. San Francisco*, 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc) ("Nor can standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true."). This is not to say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact,[3] or engage in an "ingenious academic exercise in the conceivable" to explain how defendants' actions caused his injury.[4]

[3] *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954-55 & n.9 (2011) (en banc) (holding that a plaintiff who did not allege which barriers existed at a store and how they impacted his disability could not establish injury-in-fact simply by claiming that the store deprived him of "full and fair enjoyment" in violation of the ADA).

[4] *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689-90 (1973).

We simply note that *Twombly* and *Iqbal* deal with a fundamentally different issue, and that the court's focus should be on the jurisprudence that deals with constitutional standing.

## B.

Each element of standing "must be supported . . . with the manner and degree of evidence required at the successive stage of the litigation." *Defenders of Wildlife*, 504 U.S. at 561. "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Seldin*, 422 U.S. at 501. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Defenders of Wildlife*, 504 U.S. at 561 (alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)); *see also Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 n.3 (1992) (cautioning that while at the summary judgment stage, the court "require[s] specific facts to be adduced by sworn testimony," "a challenge to a generalized allegation of injury in fact made at the pleading state . . . would have been unsuccessful"). " '[A] plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief that is sought.' " *Davis v. Fed. Elec. Comn'n*, 554 U.S. 724, 734 (2008) (quoting *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

The parties concede, and we agree, that a favorable court decision would redress plaintiffs' injuries. Accordingly we address only the first two elements of constitutional standing. We conclude that plaintiffs have established injury-in-fact and causation with respect to their overpayment and rescission claims. We hold that decreased value and desirability are concrete injuries-in-fact, but agree with the district court that the current record does not establish a sufficient causal connec-

tion between defendants' actions and plaintiffs harms. Never-theless, we hold that plaintiffs should be permitted to amend their complaint because plaintiffs may be able to establish by amendment that they have standing to pursue their claims.

1.   *Overpayment and Rescission*

[2]  *a. Injury-In-Fact.* To qualify as an injury-in-fact, an alleged harm must be "concrete and particularized" and "ac-tual or imminent, not conjectural or hypothetical." *Laidlaw,* 528 U.S. at 180-81. Plaintiffs claim that, as a result of defen-dants' actions, they paid more for their homes than the homes were worth at the time of sale. Relatedly, they claim that they would not have purchased their homes had defendants made the disclosures allegedly required by law. We agree with plaintiffs that these are actual and concrete economic injuries. *See, e.g., Valley Forge Christian Coll. v. Ams. United for Sep-aration of Church and State,* 454 U.S. 464, 486 (1982); *Sierra Club v. Morton,* 405 U.S. 727, 733-34 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing"); *San Diego Cnty. Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing."). Allegedly, plaintiffs spent money that, absent defendants' actions, they would not have spent. *Cf. Gen. Motors Corp. v. Tracy,* 519 U.S. 278, 286 (1997) (holding that consumers who paid more for gas than they should have as a result of discrim-inatory tax laws had Article III standing). This is a quintes-sential injury-in-fact.

[3]  The district court concluded that the possibility of improvement in the housing market made plaintiffs' injuries speculative, because it is possible that they could sell their homes for a profit at some point in the future. The district court misapprehended plaintiffs' allegations. Plaintiffs claim that they paid more for their homes than they were worth *at the time of sale.*[5] Future recovery in the housing market will

---

[5]We reject defendants' argument that, under *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005), plaintiffs could not have paid more

not cure plaintiffs' injuries—if plaintiffs had paid what the homes were worth at the time of sale, they would obtain greater returns if they sold during a time of economic improvement. Further, if plaintiffs would not have purchased their homes absent defendants' misconduct, the injury was created at the moment of fraudulent purchase, and is not affected by any changes in the housing market.

**[4]** *b. Causation.* Defendants would have us require plaintiffs to demonstrate that defendants' actions are the "proximate cause" of plaintiffs' injuries. Plaintiffs do not bear so heavy a burden. To survive a motion to dismiss for lack of constitutional standing,[6] plaintiffs must establish a "line of causation" between defendants' action and their alleged harm that is more than "attenuated." *Allen v. Wright*, 468 U.S. 737, 757 (1984). A causal chain does not fail simply because it has several "links," provided those links are "not hypothetical or tenuous" and remain "plausibil[e]." *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002) (citing with approval *Autolog Corp. v. Regan*, 731 F.2d 25, 31 (D.C. Cir. 1984) (What matters is not the "length of the chain of causation," but rather the "plausibility of the links that comprise the chain.")). In cases where a chain of causation "involves numerous third parties" whose "independent decisions" collectively have a "significant effect" on plaintiffs' injuries, the

---

than their homes were worth because they paid the price supported by the market at the time. *Dura* is inapplicable to this case because it discussed the standards for proving the loss and causation elements of a private securities action under 15 U.S.C. § 78u-4, not standing under Article III. The elements of a statutory cause of action are irrelevant to the constitutional standing analysis.

[6]Defendants' reliance on *Duke Power Co. v. Carolina Envt'l Study Group Inc.*, 438 U.S. 59, 75 n.20 (1978) and *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) is misplaced. *Duke Power* involved a final judgment on the merits. 438 U.S. at 67-68. *Simon* was an appeal from the grant of summary judgment. 426 U.S. at 41-42. Neither case establishes the burden for surviving a motion to dismiss.

Supreme Court and this court have found the causal chain too weak to support standing at the pleading stage. *See Allen*, 468 U.S. at 759; *San Diego Gun Rights*, 98 F.3d at 1126.

[5] The district court concluded that the "housing bubble, or inflation of housing prices, was a nationwide phenomenon, traceable to variables independent of Defendants' alleged scheme, such as lax regulatory enforcement, rates of unemployment, credit market developments, and general economic growth." Accordingly, it held that plaintiffs had not established a sufficient causal connection between defendants' actions and the allegedly inflated prices paid by plaintiffs. We disagree. Construing the facts in the light most favorable to plaintiffs and drawing all inferences in their favor, plaintiffs have sufficiently alleged that defendants, not third parties, inflated the "bubble" in their particular neighborhoods, causing plaintiffs to overpay. Plaintiffs claim that defendants financed a substantial majority of buyers in plaintiffs' neighborhoods, and were thus able to dictate the terms of a large number loans and plausibly create demand that would not otherwise have existed. Further, the neighborhoods were new developments, so there was no independent economic baseline against which to assess the neighborhoods' value. Under these circumstances, plaintiffs can plausibly claim that the "artificial demand" created by defendants' marketing and financing practices had an identifiable effect on the price they paid for their homes.

[6] The causal connection between defendants' actions and plaintiffs' rescission claim is even stronger. Plaintiffs state that they would not have purchased their homes had there been proper disclosure of defendants' lending practices. There is a direct causal link between defendants' allegedly faulty disclosure and plaintiffs' injuries. In sum, we hold that plaintiffs have established both injury and causation sufficient to withstand a motion to dismiss on their claims that (1) they paid more for their homes than they were worth, and (2) they

would not have purchased their homes had defendants fully disclosed their practices.

### 2.   *Decreased Value and Desirability*

[7]  *a.   Injury-in-Fact.* A current reduction in the economic value of one's home is a cognizable injury for constitutional standing purposes. In *Gladstone Realtors v. Bellwood,* 441 U.S. 91, 101-11 (1979), plaintiffs sued real estate brokers for "steering" white prospective home-buyers away from their neighborhood, allegedly in violation of Title VII and the Fair Housing Act. Plaintiffs alleged, among other injuries, that the brokers "manipulated the housing market of Bellwood to the economic and social detriment of the citizens of [the] village." *Id.* at 115, n.30. The Court held plaintiffs had alleged a cognizable economic injury sufficient to survive summary judgment. It stated that plaintiffs would have to prove at trial "absolute or relative diminution in value of the individual [residents'] homes" but noted that "convincing evidence that the economic value of one's home has declined as a result of the conduct of another certainly is sufficient under Art. III to allow standing to contest the legality of that conduct." *Id.* at 115; *see also Laidlaw,* 528 U.S. at 183-84 (2000) (determining that a plaintiff's declaration that "her home, which is near [defendant's] facility, had a lower value than similar homes located farther from the facility, and that she believed the pollutant discharges accounted for some of the discrepancy" properly supported the plaintiff's claim that the challenged action "directly affected [her] . . . economic interests."). Similarly, in *Barnum Timber v. U.S. Environmental Protection Agency,* we held that a landowner alleging that it would suffer a reduction in the economic value of its property on account of the EPA's impending classification of a neighboring creek as an impaired water body had established an injury in fact sufficient to withstand a motion to dismiss. 633 F.3d 894, 898 (9th Cir. 2011); *see also Allandale Neighborhood Ass'n v. Austin Transp. Study Policy Advisory Comm.,* 840 F.2d 258, 262 (5th Cir. 1988) ("[A] market devaluation has present

adverse consequences short of realization through sale."). These cases establish that a present decrease in the economic value of one's home is a cognizable and concrete injury-in-fact.

[8] The district court's holding to the contrary rests primarily on its conclusion that plaintiffs will not realize any decrease in the value of their property until they attempt to sell (and that the economy may improve in the interim, preventing any loss), so the injury is speculative. The district court's position cannot be reconciled with *Gladstone*, *Laidlaw*, and *Barnum Timber*—nothing in those decisions suggests that plaintiffs had attempted or would attempt to sell, or that selling one's property is a necessary pre-requisite to claiming injury on account of its decreased value. More fundamentally, the district court's reasoning misses the thrust of plaintiffs' claims. Plaintiffs argue that defendants' acts caused their homes to lose value *above and beyond* those losses caused by general economic conditions. Thus, disregarding the vicissitudes of the national housing market, the portion of the diminution in the value of plaintiffs' property attributable to defendants' acts remains. To be sure, plaintiffs would need to quantify the damages resulting from decreased value in order to recover, but that isn't necessary to establish injury at the pleading stage. *Gladstone*, 441 U.S. at 115.

[9] Relatedly, plaintiffs claim they were injured because the blight resulting from defendants' lending practices makes their homes less desirable places to live. Decreased quality of life is an injury in fact sufficient to support standing. For example, in *City of Sausalito v. O'Neil*, 386 F.3d 1186, 1198-99 (9th Cir. 2004), we held that a city had constitutional standing to pursue its claim that defendants' acts would result in increased traffic, crowds, decreased attractiveness, and damage to the town's historical character. *See also Walker v. City of Mesquite*, 169 F.3d 973, 980 (5th Cir. 1999) (holding that property owners alleged injury by claiming that newly constructed housing projects would increase traffic, noise, and

crime); *Kelley v. Selin*, 42 F.3d 1501, 1509 (6th Cir. 1995) (holding that landowners had alleged sufficient injury to aesthetic interests caused by storage of nuclear waste nearby); *Alschuler v. Dep't of Hous. & Urban Dev.*, 686 F.2d 472, 476-77 (7th Cir. 1982) (holding that plaintiffs who alleged that occupancy of a nearby housing project would increase crime, strain community resources, and decrease the aesthetic quality of the neighborhood had alleged an injury in fact sufficient to withstand a motion to dismiss).[7] Both reduction in value to one's property (even if one has not attempted to sell the property) and decreased quality of life are concrete injuries.

*b.   Causation:* To support their claim that defendants' actions resulted in decreased home values, plaintiffs allege that sales of homes subject to foreclosure are "usually well below market value," and those sales "then become the new comparative sales values for the neighborhood . . . [at] a vastly lower market rate." Thus, on plaintiffs' theory, the decreased-value injury does not occur until the risk posed by defendants' lending and disclosure practices comes to fruition in foreclosure. The same is true of plaintiffs' decreased desirability claim. They contend that *foreclosures* (not merely the risk of foreclosure) resulted in abandoned homes and other forms of blight.

**[10]** We agree with the district court that plaintiffs have not established how defendants' actions *necessarily* result in

---

[7]Defendants attempt to distinguish these cases by arguing that each case involved a physical intrusion onto plaintiffs' property. This distinction is immaterial for the purposes of determining whether plaintiffs have been *injured* — the decrease in value and desirability exists whether caused by a "physical" or "non-physical" intrusion. The thrust of defendants' argument is that they should not be liable for failing to disclose non-physical factors affecting plaintiffs' property values. This argument concerns the merits of plaintiffs' claims, not whether they have standing to pursue them.

foreclosure,[8] nor do plaintiffs' complaints allege that the decreased value is caused by the *risk* posed by their neighbors (even absent foreclosures).[9] Nevertheless, we conclude that, in the circumstances presented, plaintiffs should be permitted to amend their complaint. "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Krainski v. Nev. ex rel. Bd. of Regents of Nev. System of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010).

Before the district court, plaintiffs offered to amend and produce an expert report distinguishing the effect of defendants' actions from general economic influences. Expert testimony can be used to explain the causal connection between defendants' actions and plaintiffs' injuries, even in the context of other market forces. *Barnum Timber*, 633 F.3d at 900-01. Accordingly, we cannot say that it is clear that the complaint could not be saved by any amendment. The district court should have permitted plaintiffs to amend and include any expert testimony that could have established a sufficient causal connection between defendants' actions and the decreased value and desirability of their homes.

### III.

We hold that the district court erred in dismissing plain-

---

[8] *See Bennett v. Spear*, 520 U.S. 154, 168-69 (1997) ("[I]t does not suffice if the injury complained of is the result of the independent action of some third party not before the court, [but] that does not exclude injury produced by *determinative or coercive effect* upon the action of someone else.") (emphasis added).

[9] *Cf. Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010)("A plaintiff may allege a future injury in order to comply with [the injury-in-fact] requirement, but only if he or she 'is *immediately* in danger of sustaining some *direct* injury as the result of the challenged . . . conduct and the injury or threat of injury is both real and immediate, not conjectural or hypothetical.') (quoting *City of Los Angeles*, 461 U.S. at 102 (1983)) (emphasis in original).

tiffs' overpayment and rescission claims for lack of Article III standing. We also hold that plaintiffs' decreased economic value and desirability are cognizable injuries. While we agree with the district court that, on the current record, plaintiffs have not established a sufficient causal connection between any decreased value and desirability and defendants' actions, plaintiffs should be permitted to amend their complaint and attach expert testimony on causation. Accordingly, we reverse and remand for further proceedings.[10]

---

[10]In light of this disposition, we do not reach the issue of whether the district court should have granted defendants' motions to dismiss for failure to state a claim or failure to plead fraud with particularity.